Attorneys please come up and identify themselves and introduce themselves. Ingrid Bill, Assistant Public Defender on behalf of Joe Jones. At counsel table, my supervisor, Carol Winston, and my co-counsel, Ronald Hayes. Thank you. I'm Assistant State's Attorney Tasha Marie Kelly on behalf of the people.  May it please the court, my name is Ingrid Gill and I represent Joe Jones. In the 15 to 20 minutes allocated to today's oral arguments, I'd like to address the first issue raised in appellant's brief and address the issue raised in the court's order of August 27, 2014. The first issue is the state failed to lay a proper foundation for the expert firearm examiner's testimony regarding the identification of individual characteristics and also the basis of the opinion that there was sufficient agreement based on those individual characteristics. At trial, the state brought out a firearm examiner, Justin Barr, testified that individual characteristics are the irregularities or imperfections that are caused by the manufacturing process due to the use or abuse of the tool. He testified, that's at Y71, record five. He also testified a particular firearm will have its own set of individual characteristics that set it apart from other firearms. He said that the basis for an identification using pattern matching methodology is sufficient agreement of class and individual characteristics. This prosecutor in the case then posed the question to this examiner. Did you identify the individual characteristics of the evidence fired bullet? The examiner replied, can you explain what that means? The prosecutor then stated, we'll get back to it. The prosecutor didn't and in both direct examination and cross examination, this examiner never provided forensic testimony that he had ever identified an individual characteristic on the fired bullet that was recovered from underneath the body of the decedent. Did Barr give any reasons for his conclusion that there is a match? The basis of his conclusion was the theory of identification is based on sufficient agreement of class and individual characteristics. The problem with this case is in science, zero has a numerical value. If there are zero characteristics, individual characteristics observed on the fired bullet, then his testimony is not perjurous, but it's misleading. Are we talking about science here? Is this scientific determination? It is not as scientific under traditional microscopy used in biology or firearms examination to not identify the individual characteristics based on their definition of the pattern matching theory espoused by the Association of Firearm and Toolmark Examiners. This is their theory, sufficient agreement. Can there be sufficient agreement if there is zero observed individual characteristics, striations, imperfections, irregularities on the fired bullet in question and the test fired bullet? Under their definition, there could be. There is zero agreement. There's agreement. There's zero. He doesn't testify to that. But he wasn't cross examined on that either. He was cross examined on his lack of detail of the individual and class characteristics, but the cross examination did not say, and if there is zero areas of agreement for individual characteristics, he would still find a match. He wasn't asked that question. The burden of proof to lay a foundation is on the proponent of evidence under 703. The prosecutor had the burden of proof to lay the foundation. The foundation is the fact that there is a traditional, there is an individual characteristic. To shift that burden to the defense is an unconstitutional shifting of the burden. When you say the foundation, I think you're combining the foundation with the substance of the opinion. The foundation is that he's an expert in the field. That was stipulated too. That he employed methods consistently employed by experts in the field. There's no dispute about that. And that he actually did what he said he did. That is, he put the two bullets side by side in his microscope. He examined them. His opinion was, his subjective opinion, he admits, was that there are sufficient areas of agreement, which is the standard that he uses. A colleague confirmed that. That's the foundation. When he then says, my opinion is there's a match, that doesn't mean there's no foundation. It doesn't go back and invalidate the foundation. Tell me how that works. The foundation is that he is, his expert testimony is testimonial in nature. It is based on an observed fact that only he sees under the microscope. The premise of the theory has to have underlying facts. And as a testimonial witness, even under expert rules of 705 and even 703 in terms of admissibility, that is part of the theory that there is individual characteristics. And so you would go at the end of his testimony, when the state says, you examined the bullets under the microscope, what is your opinion? My opinion is there are sufficient areas of agreement and that the bullet found of the decedent was fired from the defendant's gun. State ends its examination. And at the end of all the testimony then, having stipulated that he's an expert, that he employed the methods regularly employed in the field, that he did what he said he did to match the bullets, you then say, there's no foundation. Actually, no, you're not stipulating that he actually used the theories. You're stipulating that he's trained in the theories. The qualification goes to his qualifications in firearm and proficiency. But he said I performed this examination, which is the examination that firearms examiners use. I did this. And as a result of my examination, I conclude there's a match. I would respectfully disagree that there's no evidence, since he can't answer the specific question, is there an individual characteristic determination. If he hasn't determined it, then there's a question as to whether in their theory that he has. I mean, you have zero evidence. Basically, he's saying I know it and that you have to rely on it, trust me. You have to trust me. The danger of this and the methodology that is frequently presented to the courts about this sufficient agreement, and again, these are his exact words, sufficient agreement of class and individual characteristics, directing your attention to Record 5Y72, is that it doesn't say under his theory, you can have sufficient agreement of the class characteristics, which are established. We're not disputing class characteristics are established. What we're saying is that as a minimum foundation requirement, you also have to require these forensic examiners who are employed by police departments to say, I determined a minimum number, one striation. One. What case, you're drawing an analogy, I assume, to fingerprint examiners who do have kind of loose minimum number of matching areas to say one fingerprint matches another. Is there any case that has transposed that into firearms examination? I would, in firearm examination and latent print examination, no court of review has been presented evidence of this nature where the firearm examiner cannot answer the question on direct or on cross, was there a determination of an individual characteristic? It goes to the foundation. What about O'Neill? O'Neill is interesting because if you look at O'Neill, O'Neill requires you, experts' opinions must be based on facts and evidence. That's O'Neill. We have no evidence that there was actually an individual characteristic on the fire bullet. Admissibility of expert testimony is conditioned upon laying the proper factual foundation. We have no factual foundation that there is an individual characteristic present on the fire bullet, and he must testify as to facts personally known to him. He must testify to those facts. Which he did on the class characteristics. Yes, but we don't. Okay. But he didn't identify not even one individual characteristic, and the individual characteristics are unique to that particular gun. It's not all those .38 caliber guns that were manufactured by him. Yes, the theory is that the individual characteristics, again, the microscopic imperfections, irregularities, he says striations that are part of the manufacturing process but also come from the use or abuse of the fired bullet. So it is the only basis, scientifically, trade, artistic, whatever you want to call firearm examiners under FRI, it's the only thing to distinguish whether this bullet was fired from the .38 caliber automatic firearm that was recovered from the defendant's home or the .38 revolver that the defendant asserts was used by the two assailants who he claims killed. Or by some other .38 that was made by the same manufacturer. Yes. There must be a million .38s out there. There are all .38s. Exactly. And so without those individual characteristics, with him not being able to identify even one, what, if he had identified even one, this wouldn't be an issue? This wouldn't be an issue, Your Honor, because, again, the courts of review are experts in the law. They're not experts in forensic science. But at a minimum, you need a minimum degree of evidence. You need a fact. I would propose it might not be generally accepted under science, but if the court had, if this firearm examiner had said, I observed one striation under the microscope and the same striation was under the fired bullet. As I looked under the comparison microscope, that's evidence. That goes to wait. Zero striations means you haven't laid the proper foundation under the expert's theory. So I'm not attacking the theory because we're not scientists. But we are experts in the law, and we know how to evaluate evidence. We need a minimum fact. Single striation, single fact is enough to lay our foundation. Would he have to have some kind of documentation or narrative that he wrote at the time to show what his conclusions were? I think that goes to admissibility under Robinson, Frey, and Illinois Rules of Evidence 703. Because in this case, the opinion is subjective. We don't have an indicia of scientific principles behind it. He's not recorded in his workbench notes the individual characteristics. In contrast, if you look at the firearm class characteristics, he has a workbench and he notes the specificities. No other analyst can actually look at his case file and make an independent expert opinion based on what he's written because his opinion is too subjective. Well, but then the defendant sought and was granted leave to have the gun and the recovered and test fired bullets examined by an independent examiner of defendant's choosing. There is a suggestion in the record that the expert retained by the defendant reached the same conclusion as the expert retained by the state. What do you make of that? I would disagree. I think we're going into impermissible shifting of the burden of proof. That is not disclosed yet. It's in the record. I'm asking you what you make of that. I did not see at trial anyone testify regarding an independent expert's testimony. It wasn't offered by the defense, and I don't think the defense had a burden. I'm not talking about a burden. Your argument here is that the defendant was handicapped in his cross-examination of the expert and prejudiced by the jury's consideration of this expert opinion because he had no idea what the basis for the state's expert opinion was. But the record discloses that the defendant had an expert examine the same evidence. By mistake, the defendant's expert's opinion was returned to the state, and there is a representation in the record that the defense expert reached the same conclusion. I did not see that. I don't know who it was offered into evidence. It wasn't offered into evidence. It couldn't be offered into evidence. Then I don't think it's properly before the Court. But addressing your issues, there's a confrontation, Sixth Amendment right,  if he refuses to disclose whether he identified any individual characteristics to shift the burden on the defense to prove a fact that is not in evidence is unprofessional constitutional shifting. But you're not raising a constitutional issue here. In response to Justice Mason's question. In your brief, you didn't raise any constitutional issues. No, I didn't. I am concerned, though, but if you base it on Stafford, Stafford is based on the Sixth Amendment right. It has a constitutional basis. It's not articulated well in Stafford, and the Court didn't go into the testimonial nature of the firearm examiner, as they have under 703 in subsequent decisions after William v. Clark where, you know, they really went into detail about what makes it testimonial in nature. To have a confrontation issue, it has to be testimonial in nature. They didn't address that in Stafford. But that was more academic. But it's there. They just didn't verbalize it. I just wanted to clarify, we don't have any Frye issue here. You're not raising Frye. Your Honor, I think under the Frye issue, I would raise it in the sense that this examiner presented at trial a new and novel way of interpretation. Regarding the individual characteristics, that he didn't have to actually have any characteristics. In other words, most responsible firearm examiners will note in a workbench, will testify to the Court, even if it's one striation, it's one scratch that was unique, that matched the evidence-fired bullet to the two test-fired bullets. He doesn't do this.  This is new and novel. So his application of that part of traditional pattern matching theory identification, that his own organization, again, the Association of Firearm and Toolmark Examiners, it wasn't raised at trial. I realize it's a forfeiture of the party. But it doesn't bar the Court to really seriously consider that Justin Barr's opinion is an outlier. No court has ever presented with facts. We're not talking about paucity as the dissent did in Safford. We're talking about zero, numerical value zero. And at a minimum, all I'm asking the Court to say is that there was an improper foundation and to reverse his conviction. And not only that, though, the question then becomes, did double jeopardy attach? Because if you reverse his conviction on the lack of foundation, you're basically telling this analyst on his novel method, subjective, of determining individual characteristics, just testify to one striations. We can't cross-examine you because you don't record it. You don't identify it. You don't notify your co-worker. Here's the individual, the one single striation that I'm basing my opinion. His supervisor can't even quality control, quality assurance, do a peer review. Even his peer review process is novel under their own theory. In other words, factual observations under the microscope only mean you're enhancing something you see. The interpretation did require expertise in terms of, was the imperfection, irregularity, or striation unique? But he didn't document it. Nobody can independently check. And that's why I think usually evidentiary errors, they're reversed and remanded for a new trial. The danger in this case, when you're talking about a police employee, is they would have to change, they would have to do the test and over. Because there's no way to guarantee that he wouldn't, you know, that he would change his testimony on the absence. Well, they have a photograph of what he saw in the microscope. They didn't introduce it as evidence, but it does exist. I think the problem with, though, what are you looking at? You're still going to ask another expert. They could do the evaluation over, but his testimony is totally useless to another examiner because he doesn't identify with specificity what quadrant of the microscope. I mean, there's problems with the microscope. Are you saying that even if we look at the AFTE on what they say, he did not follow it? He didn't follow it, Your Honor. But he never testifies to AFTE. Well, that's the problem. He doesn't actually even say that he's following their guidelines. No, he says he's a member of it. All he says is he's a member. In the Robinson case, I mean, again, I disagree with the other division's conclusion because I actually think that examiner had established enough that it was science. The talk about error rate and validations are probabilistic models that are not always used in every science. And so degrees of certainty, the fact that you don't use that language, which is not a term of art, it means that in the science practice, the methodology, you might not be able to. I mean, doctors say with a reasonable degree of medical certainty. Psychiatrists say a reasonable degree of psychiatric certainty. Psychiatrists use the DSMV. Doctors use their medical manuals. There is objective scientific criteria that their opinions are based on. Right, but you filed a motion in Lemonet in this case to prevent this expert from saying to a reasonable degree of forensic certainty precisely for that reason. And the state, actually the judge didn't rule on it. The state decided on their own that they were not going to present this as science. And I couldn't find anywhere where they actually used the word of science. And this analyst didn't use the word science either. Well, they did identify him as a forensic scientist. So the word was in there. And the danger is that a jury who heard this case could assume that he was based in his opinion on science. One more minute on this, and then we have to move on to whatever other topics you have. Your Honor, in reference to the admissibility that you raised, I would say that a subjective opinion that in this case, where he doesn't say it's based on any guidelines, that he doesn't document it, is a novel new approach that this Court has not seen before. And his application of that part of the pattern match and methodology doesn't meet the scientific, the minimum standards under established judicial precedent. And I would like to reserve any remaining time, Your Honor. I think I've exceeded my time. Okay. Thank you. Thank you. State. Again, may it please the Court, I'm Assistant State's Attorney Tasha Marie Kelly on behalf of the people. There's a couple of different issues that are kind of getting combined together here, and that's the admissibility of the testimony that was given by Justin Barr and the weight that should be given to that testimony. Justin Barr was stipulated to as an expert witness, and he testified before the Court as to his qualifications as an expert witness. He's a trained firearms examiner. He has a degree in science. He testified that he had received two years of firearms training and additional training throughout. It's clear that he was qualified. He testified. That's not an issue. Correct. But because he was testified that he was an expert witness, he was accepted as an expert witness, then his testimony would be governed by Rule 705 in Wilson v. Clark, which says that the foundational requirements for his testimony are different than they are for other witnesses. Well, aren't you missing the foundation requirement for him to be an expert with the foundation requirement for the facts he's talking about? For the facts that he's talking about, Justin Barr, the foundation that he has to provide is that it's established that he's an expert, that he performed these tests, that he performed them using methods that are commonly accepted within his field, all of which he testified to. So trust me. And then he specifically went on to talk about what he did. And I acknowledge that he described what he did, how he did it, but he never described what the result of it was except for the class characteristics, which we've all agreed exist in any number of guns. It's not going to tell us a unique identifier for this gun and this bullet. Well, he specifically testified on three occasions that he performed the examination looking for individual and class characteristics. Give me one individual characteristic he testified to. Excuse me. He did not specifically testify that he tested for individual characteristics. He kept saying if there's enough agreement between class characteristics and individual characteristics, then there's a match. But he never said what he did to look at for individual characteristics. Specifically, no, but he did testify on page 108 and 114 of the record that he performed tests looking for class and individual characteristics. In the microscope. Correct. He took pictures of that. But he did not specifically testify to what those individual characteristics were. He's got this microscope and it's got two sides on it. He's looking at it and he's like, oh, in my opinion, these match. He's got a picture of that. What stopped the state from bringing in the picture, for example, where I'll see a side to death? Why not just bring in the picture and say to the jury, see this match? This matches this. See this. These two match. See these three match. Why not do that? Why isn't that what the state wants to do in every bullet case? Because they've never been required to. If you look at the testimony that's been given in these cases, I could cite un- Okay. Counsel, technology has advanced. We're not 80 years ago. We're today now where people have PowerPoint and cameras and all sorts of equipment and things. Even the microscopes are advanced. And so to say 80 years ago trust me was enough, well, maybe it was. But today, how can trust me be enough? But it's not just trust me. It is trust me. It's I'm an expert witness. I performed this test using the standard that- Is this what the AFTE required, what he did? Does that follow the AFTE? They require sufficient agreement between individual and class characteristics. They acknowledge that it's a subjective test. They state that you have to rely on, and specifically they state you have to rely on the subjective judgment of the individual examiner. They do. But they also say you're supposed to record things in a narrative, document it, and have reasons. You're supposed to have a basis, a reason for your conclusion. But it doesn't require that he testifies to those specifically in court. How would anybody know the reason if he didn't testify to it? And how could the defense cross-examine the reason? Well, there's no reason that the defense couldn't cross-examine on the exact questions that you're looking for here. What individual characteristics did you look at? Did you look for striations? Did you look for ridge marks? Did you look for other rifling characteristics? Did you look for- Well, rifling is a class characteristic. You're correct, it is. So an individual characteristic would be something like if the firing pin had a little dent in it for some reason because the gun wasn't clean. And then every bullet that came out of the gun would have a matching dent. Well, those are the unique characteristics that you want to look for when you're matching the bullets. If those aren't explained to the jury or to the trier of fact and not part of the record, how can anybody then say, oh, right, he looked at that? We don't even know for sure that he did look at individual characteristics because he never testified that he looked at them. He said he set it up to look at them, and if there was an agreement, he'd be satisfied. But he never said, I looked at individual characteristics. He did look at the class characteristics. He testified to that. But that doesn't make his testimony non-admissible. It might affect the weight that should be given to that testimony. But he can still give his testimony and give his expert opinion under Rule 705 and Wilson v. Clark and all of the cases that establish that an expert can provide testimony like that, and it's admissible. It just affects the weight that's given to it. And certainly, just as Your Honor came up with four or five questions that could be asked, defense counsel could have just as easily asked those questions on cross-examination to bring out whether these things were looked for or the fact that he had not testified to any individual characteristics in his direct testimony. But wasn't it his burden, the defense, the prosecutor's burden to show how he reached his conclusion? I mean, the fact he did talk about characteristics of the other characteristics, but he didn't talk about the individual characteristics. He established that he followed, he testified that specifically he followed the methods and procedures that were commonly accepted in the firearms testing community. He explained what those procedures were, which are to look for class and individual characteristics, and that based on that and his examination under the comparison microscope, he found that there was sufficient agreement. And it should be pointed out as well that we're not just relying on Justin Barr's testimony. He also testified that his work was verified by another examiner who also examined the two bullets or all of the bullets side-by-side under the comparison microscope. First of all, was this a blind test? Was there any blind or double-blind procedures involved in any of these in this situation? I'm not sure I understand your question. Well, he knew, for example, he got the gun, he got the bullets. He knew exactly what was going on here. This was – and also, didn't he tell the person who – the second person who gave the opinion, didn't he tell him what his opinion was? Barr told him what his opinion was before the verifier said whether that was right or not. Yes, he did. Well, that doesn't – that's not – if I tell you something and then you say, oh, of course. I mean – and he said that they rarely, if ever, disagreed. But there have been disagreements. They don't document them. So we have no idea statistically whether it's 1% of the cases in which there's a disagreement or 30%. We just don't know. We don't know how reliable that verification process is. We have no idea. But does that go to the foundation or the weight? Again, it goes to the weight that's given to the testimony, and it doesn't go to the admissibility of the testimony. He's an expert witness. We rely on his testimony in order to clarify things that an ordinary layperson would not understand. And the testimony that he gave explained his procedure. It explained the methods that he used. It explained that those methods were the ones that were generally accepted. And that is enough for him to offer his expert opinion, which was that there was substantial agreement. Trust me. It's more than trust me. No, it's not more than trust me. It's I follow these procedures. But he followed those procedures, but he never said, I looked for individual characteristics and I saw them and they matched. Even then, defense would say zero isn't enough. If he had even said that, we'd have something. But there's nothing here. But I would disagree with that. Based on the record where he says, I performed these tests, I looked for class and individual characteristics, and I found that there was sufficient agreement based on my examination using this procedure. I would say that based on that, you could infer from that testimony that he found class and individual characteristics. And I'm sorry, if you look at the O'Neill case, which is cited in my brief, in that case, the court said, as long as you explain the procedure that was generally used and you provide information about the method that you used, that's sufficient. And that's exactly what Justin Barr did here. It also says that if he establishes that there are bases for his opinion based on facts known only to him, he has to testify to those facts. Where is his testimony about those facts? His testimony is, I looked for class and individual characteristics. No, no, his testimony is about this procedure. Where is his testimony about the facts that he identified and the individual characteristics? But the O'Neill case doesn't say that, short of him specifically saying, I found three individual characteristics. I'm not giving a number. I'm not saying a number. But let's say one. The O'Neill case doesn't say, short of me finding one individual characteristics, my testimony is not admissible. The O'Neill case says, if there's a factual foundation and he bases his opinion on facts known only to him, he must testify to those facts. And I'm asking you again, Counsel, where did he testify to the facts known only to him on the individual characteristics? Not the process, but the facts. This bullet and this bullet. Where is the testimony about those facts? There's no specific testimony as to the individual characteristics that he found. But he does testify to the class characteristics. And that testimony alone could be sufficient. There's nothing that indicates that. There's no disagreement in the class that they even said that. So we're only talking about the individual characteristics. And yet you can't give us one because there isn't any. Because there doesn't have to be. There's no case out there that says a firearms examiner or even, you know, a tool mark examiner has to specifically testify to the explicit individual characteristics that they observed. They have to testify to the methods that they used. They have to testify that those methods are commonly accepted. And that's the foundation for their testimony. And they don't have to talk about what they found in order to reach their conclusion. For their testimony to be admissible? No. As to the weight that should be given to that testimony? That's a different question. And the weight of Mr. Barr's testimony was the centerpiece of the defendant's closing argument. It was. And it's clear, it's been clear in the circuit court, in the appellate briefs, and in that the question has always been the, not the admissibility of the testimony, but the weight that should be given to that testimony. I'm not sure I agree with you. I think the defense briefs make the issue, the fact foundation, an issue. But in using the term, they're using the term foundation, but what they're really talking about is the weight that should be afforded to that testimony. I don't think they said that at all. I mean, I think that's exactly what they're not saying. In the appellate argument, I agree. They're saying something different. Well, in their motion, they were talking about the foundation at trial court. Right. In the motion, they're specifically talking about the fact, and in the objection that's made during trial. It's based on Safford. Okay. So if there's nothing further for these reasons and for the reasons in both the people's memorandum and their brief. Wait, wait. What do you have to say about double jeopardy? Defense counsel says there may be a double jeopardy problem here. Well, as far as the inability for us to proceed, if this testimony was excised, you know, this wasn't an issue that was raised before the court. Certainly there would arguably be another examiner who we could potentially call. There was another examination made already of the bullets in this case. That would be the defense examiner. Certainly if this court would like me to address that in a supplemental briefing, I would. But I would say that that has never been raised before before this court. Okay. Based on the fact patterns we have here before us, this is a case of first impression where the court is looking at the record and there's an absence, a zero numerical indication of any individual characteristic. No other judicial decision has had to address the issue. This was an unusual case where an analyst just couldn't answer the simple question posed by a prosecutor. Did you determine an individual characteristic of the fired gun? What the state is arguing, if you argue hypothetically, if there are zero individual characteristics and it goes to wait, I think the confrontation clause requires you as the state, because the state also has an ethical duty as a prosecutor that's now being triggered, to disclose the fact, because again, Barr's testimony concerning the individual characteristics of the evidence fired bullet strengthened the state's case. No other evidence of individual characteristics of the fired bullet is presented. There's an absence of corroborating scientific testimony. The state's suggestion that you use a non-testimonial defense expert is unconstitutional outright. I'm just going to say that. Because actually, it was unconstitutional to force the disclosure of the non-testimonial defense expert if that's what happened. Again, I don't. No, it wasn't. It was inadvertent. When the defendant returned the materials to the state, the defense expert's report was in there. If you look at, again, what the state is addressing on Record 5, Y07 through Y08, this is on the cross-examination. They're shifting the burden for the defense to lay the foundation. You can't cross-examine something that's not there. Again, I would actually say that the trial attorney would have been facing ineffective assistance of counsel claims if he had established a trial to lay. But see, that's where you lose me. Because you're saying there was this nonspecific opinion offered by the prosecution. We had no idea. We had no idea how to cross-examine this because we didn't know the basis. But the record discloses that the defendant did retain an expert, did do the testing, did get a report. And so the claim that I can't cross-examine this expert because I have no idea is something I have a hard time buying. Okay, the cross-examination of the expert regarding how he determined the imperfection and irregularities and striations goes to both the fired bullet and the test-fired bullet. Clearly he cross-examined on the test-fired bullet. But I think the court has to be careful to shift the burden of laying the foundation on the defense. You know, we did cross-examine, but again, we didn't have that numerical value of zero to cross-examine on. Because if you had, the numerical value of zero characteristics is the foundational requirement. If you didn't lay the foundation as the prosecutor, you are shifting the burden onto the defense to cross-examine a non-existent fact. I think that's what my concern and in this line of questioning. Also, when the state refers to Wilson versus Clark, that goes to rule 705, admissibility. And so you might have here a rogue firearm examiner who is testifying solely on his subjective opinion. And his approach is new and novel because I really have not seen any case where a firearm examiner hasn't been willing or a latent print examiner hasn't been willing to say, I found one point of similarity is what they use in latent prints. There is a body of law about latent print examiners that talks about the number of points of identification. There isn't any body of law regarding firearms examiners and the standards that the national organization uses are nonspecific. They don't say a firearms examiner must identify one, two, three, or any number of individual characteristics. No, those decisions are not referring to individual characteristics. They are referring to points of similarity or sufficient agreement of the individual characteristics in the class. They didn't address specifically the issue. Because this is a sub-process. Again, the methodology is pattern matching theory proposed by the American, I mean, the Association of Firearm and Tumac Examiners. The premise, the underlying premise of the theory is that you make an individual characteristic identification, a determination of a single, minimum single. Again, if science has numerical values, you have to make a minimum of a zero match. There has to be something there to match. All you have present here is a matching of class characteristics. So we're addressing, unfortunately, 703 and 705 in this case, you really have to interpret them because they go together. Because this is such a novel fact pattern. There is no decision addressing the absence. Stafford doesn't actually say zero. They say paucity to the point that the methodology, the lack of documentations, but this case is quite distinguishable. We have zero evidence of a single striation that would constitute a class characteristic. So it triggers we did not raise admissibility, but again, the court is not barred from considering it. Did his individual approach meet the basic admissibility requirements? He didn't rely on scientific principles. Actually, he never said his lab is accredited. He didn't quantify, he didn't calibrate the weight. Remember, he weighed the bullet. It was a subject of cross-examination. You weren't talking about a non-calibrated microscope or a non-accredited laboratory. It was stipulated that he's an expert in the field by experience and training. Qualifications don't make the opinion expert testimony. It merely qualifies you to testify that beyond your eyewitness identification, remember, Justin Barr is an eyewitness as to what he sees under the microscope. His expertise is based on the striations, if he observed any. We have no evidence that he observed any, and so we're left to conclude that his opinion using a generally recognized accepted pattern matching theory of sufficient agreement in the class and individual characteristics, we have to rely on his subjective opinion to determine whether or not he observed any. He doesn't establish that the lab allows him to do this, to say when he's asked by a prosecutor, did you determine the individual characteristics of the firearm, he provided an evasive answer by saying could you explain what you mean on a question that was very simple. And so there's a real, my concern is that this, he's either incompetent or this might be a case of forensic fraud. And the court has a duty on its own to say at a minimum, Illinois State Police firearm examiners, we want some evidence, some fact, if you're going to use a generally accepted methodology. What we're disputing is it seems that his determination of individual characteristics is novel, it's new, it's something we have not seen, and that's triggered by Robinson. Again, these facts are really different than anything we've ever seen. So in closing, Your Honor, I think the serious nature of the facts presented, not only are we asking that his conviction be reversed, and despite the photo, and we're actually not saying that you have to admit the photograph as to lay a foundation, this is real simple. You just have to state a fact. I would say that you have to send a strong message. He was extensively cross-examined. Double jeopardy has attached. There was a confrontation clause. We did strenuously, without impermissibly, constitutionally shifting the burden of proof to us to lay the foundation on the individual characteristic. And I think the court has to seriously consider to send a strong message that double jeopardy attaches, because what other facts can Justice Barr provide that he didn't provide on vigorous cross-examination? I know, it's something for you to... I understand forfeiture bars the parties, but not the court. Thank you all for your excellent arguments. This case will be taken under advisement. The court is in recess. Thank you.